10-003, United States v. Smith. Mr. Howard here for the appellant, Mr. Osho here for the appellant, whenever you're ready. Thank you, Your Honor. Good morning, Your Honors, Counsel, and may it please the Court. I'd like to start by addressing the Erlinger Error and specifically Prong 3 of the Plain Error Standard. During one week in 1993, 18-year-old Reginald Smith conducted two small drug sales with an undercover law enforcement agent, both in Marion County, both for crack cocaine, both for small amounts of cash. He was not arrested for this drug activity until after the second sale. And surrounding that week, he had no previous drug activity and none for several years after. In Edwards, we looked at these three facts as relevant to the analysis of whether you had met your burden on Plain Error. Obviously, there were different crimes, and I think that probably doesn't work to your benefit and not to the defendant's here. But in Edwards, we also looked at the fact that the arrest happened two days apart, which is about what we have here, about a week apart. There, you had non-consecutive docket numbers, which is something similar to what we have here. And there, you had crimes that were adjudicated significant times apart, also something we have here. And then we have something here that we didn't have in Edwards, and that is at least we have to take as an admitted fact. I agree with you, not admitted for purposes of Apprendi, but admitted for purposes of Plain Error review. Paragraph 33 of the PSI, which stated that these occurred on different dates from each other. Taking all of that together, how could a jury or a fact finder not – how could you meet your burden to show that a reasonable probability of a different result? Not just different dates, committed on occasions different from one another, which tracks the statute. Absolutely, Your Honor. So I'd like to start by first addressing Judge Luck's question about the prosecution timeline and then about the paragraph 33 in language, if that's all right. So on this record, this is different than in Edwards. The two sales were less than a week apart. But the prosecution, the arrest came for the second sale about a month later, only on the second sale at that time, suggesting that law enforcement, too, saw this as one occasion, one investigation. They prosecuted him. He pled NOLO. He completely served his sentence. His arrest for the first sale actually came two years later on October 9, 1995, the same date that he was arrested on a first-degree murder charge, also October 9, 1995. And those two cases do have consecutive docket numbers. So the first docket number is for the first-degree murder charge. The second docket number is for – so that shows – Counsel, Edwards said that a gap of three years between the arrests, even though the crimes happened about a week apart, I think two days apart in that case, indicated at least an inference opposite to what you're arguing to us now, right? So I think Edwards is different. In Edwards, my understanding was that we did not know the date of one of the offenses. So we knew the date of one offense. We did not know the date of the second offense. And we knew the arrests were two days apart. But then they were prosecuted totally separately, despite the fact that they could have been, under Florida law, consolidated if they had been related. That's not what happened here. Here, there was one arrest related to these two drug sales. He was completely prosecuted. It was finished. And only two years later, when law enforcement said, we're going to arrest Mr. Smith for this first-degree murder charge, which he was, of course, acquitted by a jury, at that point, the most reasonable inference is that they're looking through their records. We have probable cause for this old drug sale that we chose not to prosecute. We're going to add it now, right? Because we want to make sure we hold him. We want to make sure we're stacking charges on him at this point in time. It's not related to the offense itself. Let me ask it this way. It could be argued either way. You make a very compelling case. But I can also probably make a compelling case the opposite side. And if that puts us in equipoise, doesn't Rodriguez tell us that that is insufficient for plain error? No, I don't think so, Your Honor. So the reasonable probability burden is less than a preponderance. So Rodriguez and Iriel, those cases, when they talk about equipoise, I think they're talking about a different situation in the plain error context. So they're talking about a jury instruction where the jury instruction could have ‑‑ Rodriguez was a Booker case. Oh, I'm sorry. Sorry, that was an Apprendi Booker case from 2005. I'm sorry. Oh, no, no, it's okay. No, I mean, and the reason I bring it up is because this is an Apprendi-style case. And so it seems to me that if we don't know one way or the other, if there's a good argument on both sides, then it's hard for you to be able to meet your ‑‑ and it's not your fault. It's just it's hard to meet the heavy burden that you have. Well, I think although the burden is heavy, right, it is not so heavy, right? It is not proof beyond a reasonable doubt. And it's not proof even by a preponderance of the evidence, which we know specifically from Edwards, which is specifically an Erlinger Apprendi case. So when there is equipoise in the Erlinger context, I think that we have met our burden. And there is on this record plenty of evidence to show that there is a reasonable probability, again, less than a preponderance, but a reasonable probability based on this record that a jury would find one occasion. And I do want to remember to come back to Judge Lieberwitz's question and Judge Leck, you as well, about paragraph 33. That non-objection to the specific language of different occasions in paragraph 33 was not an admission of the different occasions element even for sentencing purposes, right? So that paragraph 33 had the language of the statute, the language of the enhancement, and then it did list the different offense dates. But defendants do not admit the sort of ultimate conclusion of an enhancement just by not objecting. That's true in the ‑‑ I agree with that, but it's still a fact that a jury would have or a fact finder would have. And with that, plus all the other things we're talking about, how could you show a reasonable probability of that which you admitted to as a fact in front of a jury? So I would disagree that it's a fact that the jury would have that he admitted that they were committed on occasions different from one another. I do agree that, you know, the admission of the specific dates of the offenses and the facts surrounding those offenses, like, for example, in Shelton and Burge and those Booker cases, right, the facts that were deemed admitted were from the relevant conduct, from the offense conduct. And then there was no additional fact finding or application of law to fact that was needed, like there is in the different occasions. You're right, but in none of those cases, and I've never seen this, where the PSI had the exact language and it was not objected to and thus deemed admitted for purposes of what the jury would have to find. I just, there's no parallel to that that I've seen in the Post Booker or Shelton in those cases. Sure, but I think that we do see it just more generally in sentencing, right? So we have all sorts of enhancements that they're not ACCA enhancements, they're not statutory enhancements, but they're guideline enhancements that require application of law to the facts to make sort of what I would call like an elemental fact or an ultimate fact finding for an enhancement. But defendants don't admit those ultimate elemental facts by not objecting. So just as one example, the Bankston case that we cite in our briefs for the part of the plain error standard, that was an enhancement for the use of body armor. That's an application of the law to the facts. There was no objection, right? But this court doesn't say there was no objection, therefore Mr. Bankston admitted he used body armor, right? It looks to the facts, the relevant conduct facts, the criminal history facts, to apply the law to the facts. Ms. Howard, I think that's a bit strong. I mean, you tell me. There's all kinds of factual and legal admissions and non-objections that occur at sentencing all the time. I agree, Your Honor, for purposes of this sentencing, that I lied at trial, and I agree, as it says in a paragraph, that the obstruction enhancement applies. That is done all the time. It seems like you're making, and I think on paragraph 33, the problem that I have is that the sentencing transcripts, and let me be very clear, the defender here preserved massive issues that were percolating. She preserved overbreadth. She preserved three issues that were percolating up and down the Eleventh Circuit and the Supreme Court. There's not a word about Erlinger. And then we have paragraph 33, which is occasions. How do I get by that? Because I will just speak for myself. I think once you get by that, you might be rolling downhill, but I don't see how you get by that here. Help me. Absolutely, Your Honor. So I think Your Honor makes a great point. This was a time of a lot of development in the law when it came to the Armed Career Criminal Act, so the timeline here is really important. When Mr. Smith fled guilty, Erlinger did not exist. Wooden did not exist. When Mr. Smith got to his first sentencing, Erlinger did not exist. Wooden did not exist. So as Your Honor points out, the focus of the sentencing litigation was not on different occasions. It was on the overbreadth. It was on the trafficking conduct overbreadth. So it was on whether they were serious drug offenses at all. Put aside whether, you have to not just have three convictions for offenses committed on occasions different. They have to be serious drug offenses committed on occasions different. So the entire focus of the sentencing litigation was not on different occasions. So this wasn't any kind of, I admit this is different occasions. This was, I'm challenging the drug overbreadth. And the only time we even get to different occasions in the sentencing transcript, and this is, I believe it on pages 15 and 16 of the sentencing transcript, is after all of the ACCA objections have been litigated, the prosecutor says, oh by the way Judge, there's this case Wooden, and I just want it to be clear on the record what Wooden says, and unfortunately gives, I believe, an inaccurate statement of Wooden. It says, Wooden says we have to prove that the offenses were on different dates. That's what we've proven. And that is what the district court adopted as its finding of fact. The offenses were on different dates, therefore different occasions. That's not the different occasions analysis. And so that's why, Your Honor, I think to your other question, what a properly instructed jury on the multi-factor analysis would see is that these were two sales within less than a week in the same county to an undercover part of the same investigation for the same drug for an 18-year-old boy who had no prior drug activity and no drug activity again for several years. And that supports a common sense conclusion on this record, regardless of paragraph 33, that this was one chapter in Mr. Smith's life, one criminal episode of drug dealing, and not separate episodes of a career offender. Judge Newsom, can I have another? I just want to ask one question because I want to be able to ask your opposing counsel. And this replies to what I'll call the Gilbert issue. I know you want us to wait for Gilbert, and that might make sense, but I want to ask a preservation issue regarding this. So I believe, again I'm only going to speak for myself, I believe the issue of the stereoisomers was preserved. But, and this is a big but, I don't understand how you could tell a district judge that the law is against me on this. In other words, the law is binding, it's against me. And the district judge takes that, relies on that, and makes a decision based on that, and then come to us and say no, even though the law has not changed at all on that particular issue, the law in fact is not settled, and I want you to be able to decide this. How is that fair? How is that consistent with the rules of preservation embedded within Rule 32, and our own precedent on preservation? And how is that not an invited error, or some sort of misleading error that you led the district court into? Sure, so this was preserved, right? I think to your Honor's point, the stereoisomer issue was raised explicitly in writing. It was clear, right? Probation then addressed the stereoisomer objection in writing. And then when we get to sentencing, yes, counsel did say that under existing law, she had no current argument, but she did say she wanted to preserve the issue for purposes of appeal. And I would say, I do think that the law has changed since then. And so I think what's happening is that at the time of sentencing, when defense counsel said it's correct under existing law, she's referring to the way probation resolved the objection against her, which was that under Shuler and Smith, 893.13 cocaine convictions. But either Smith is binding, in which case it's binding on us here right now, until the en banc court tells us differently, or there's an intervening Supreme Court case, or it's not, and you have an open issue to argue to us. But that's the same question that the district court had before it, and counsel told the district court, in not so many words, that Smith was binding on this issue. And so how are we to review and to critique a district court for relying on the word of counsel who told them that the law was clear on this? So respectfully, Your Honor, since the sentencing, the Supreme Court decided Brown v. United States. So Brown v. United States... That's an I.O. Ploufflin issue, and it deals with how to deal with the two different schedules and how to reconcile those, and when the schedules are. It has nothing to do with this issue. It doesn't undermine Smith. We know that from Lanes. It doesn't undermine Smith. And so I don't see how that is an intervening Supreme Court case that could possibly have undermined the position you took before and afterwards. Well, so I would say I believe that Brown was decided after Lanes. So there is that distinction. But I do think, although Brown obviously did discuss the timing issue was the main issue, Brown also made clear that there has to be a match between the federal schedule and the state schedule for it to be a serious drug offense, whereas before there was a possibility under Smith, under Shuler, that there didn't need to be some sort of categorical match to some generic federal offense. Brown is what makes clear that it has to be an exact match, and, yes, it said for purposes of Ioflupine, there was no difference. But this court has since actually decided, and I can file a 28-J on this, but in United States v. Miller then said, yes, when there is not a match, such as when we fall within this Ioflupine gap of time, it is not a serious drug offense. And so now we know that these differences, even if they might be small, are sufficient to show that a particular substance is not on the controlled substance schedule and does not qualify as a serious drug offense. So that's the difference now that I would say, but I would also say to Your Honor's concerns about equity, that is certainly something the court could consider when crafting a remedy for this particular issue. So if the court thought that there was some sort of inequitable situation here due to the change in law or litigation conduct in the district court, the court could remand for an evidentiary hearing on the stereoisomer overbreath. That's certainly within its discretion. Okay, very well. Thank you very much, Ms. Howard. Ms. Gershow? Good morning, Your Honors, and may it please the court. I want to start with the ultimate fact issue in paragraph 33. The ultimate fact that the jury would have to find if this had gone before the jury was, were these offenses committed on occasions different from another? And that's the ultimate fact that he admitted in paragraph 33. So I think the court doesn't need to look any further than that to reach the conclusion that he cannot show prejudice to substantial rights. Let me ask you this. Is the statement in Edwards that in the plain error context for substantial rights purposes, you look for the entire record? Does that include the PSR? Yes, and that stems directly from Greer, where the court sent an assessing plain error review. We look at the entire record, including, in that case, unobjected to PSR facts. And we, in fact, do exactly that in Edwards. Isn't that where we got all the facts? Yes, and also in Rivers, which was on preserved error review. Let's assume you didn't have paragraph 33. Do you think that there's still a record in this case such that the defendant could not meet their burden under third prong? Absolutely, Your Honor. What is that? That is that these offenses were committed six days apart. In Woodin, the court made clear that in the ordinary case, a separation of a day or more is generally dispositive. Ordinary speakers, when referring to these offenses, if you said, on one day, the defendant sold drugs. Six days later, he sold drugs. Same undercover? To the same undercover. How many times did he... On how many occasions did he sell drugs? An ordinary speaker would say, on two occasions, he sold drugs to the same person. The same way that if you went to the store and you... Every week, I have the same lunch order and I get it from the same restaurant and I go at the same time and I pick it up and that man sells me a sandwich. An ordinary speaker would say, on two occasions, he sold me that sandwich. Not on one occasion, he sold me these sandwiches two times. Now, admittedly, in Rivers, the court looked to other factors to say there's a possibility that given these factors, a jury might not find beyond a reasonable doubt different occasions, but here we're not talking about a mere possibility as this court made clear in Edwards. The burden is on the defendant to show a reasonable probability and merely pointing out that these are the... And we don't know for sure on this record that it's even the same undercover agent. We just know it is an undercover agent. So what you have here is, on six days apart, he sold drugs to someone. And that's what drug dealers do. They sell drugs to people on repeat occasions, generally. And in the ordinary course, a jury would find that each of those transactions is on a different occasion. You also have large gaps between when occasion one and occasion two was charged. We also have non-consecutive case numbers. Aren't those the same factors that we look to in Edwards? Yes, Your Honor. The third problem wasn't met? Yes, Your Honor. And I think that further differentiates this case from Rivers. In Rivers, he was charged with all four offenses and convicted of all four offenses at the same time. If I can move to the Gilbert, what I'll call the Gilbert issue right now. Is it your position, is it the government's position, that the defendant did not preserve the stereoisomer issue? Or is it your position that there is some sort of invited error or something else once it was preserved? Our first and strongest position, I think, Your Honor, is that it was invited. The preservation, I realize, is a little bit fuzzy. But when I think about it, if I were a district court judge and this procedural posture had happened and the position of the defendant was that the United States had a burden to prove the categorical match of these drug schedules, there's no way that that was teed up for the district court to rule on. I don't think that is the government's strongest point. I mean, you make any argument you want. But I don't see how you can read the letter from April 5, 2022, which is to the probation office, which sort of sets out all the objections, specifically referencing macabre and specifically referencing the stereoisomer, the difference in definitions between the isomers, between the federal and state schedule. And then when you get to sentencing and these things come up, there's a reference to macabre again. And, yes, there's sort of a mixed up of the I.O. Plouffe Lane issue, or I.O. Plouffe Lane, I mispronounced that, and some of the other litigation that was going on in that. But once you file that and make that objection and then reference it later, I just don't know what more that we can expect anyone to do. Now, I am not one who believes that you can just say overbreath and, like, the entire world comes in. There are people who disagree with me on that. But in me, you have to tell the district court something. But here, they told the district court something. And so how can we say that's not preserved? I think what—first of all, you have to look at what happened in between. They filed the stereoisomer objection. Then they notified the court of Jackson, and they say this is the exact same issue. This is this I.O. Plouffe Lane issue. And then they get up at sentencing and they say macabre. But, I mean, I'm familiar with macabre, but I don't know that it's— there was no macabre decision. I'm not sure it's fair to expect the district court to know what the macabre case is, absent a decision. So I just think the way that it was litigated didn't fairly present this to the district court. But I'm not going to push on this. I don't want to waste my time because I agree it's not our strongest argument. And I think our strongest argument is that, besides invited error, is that it doesn't matter if it's preserved or not because the burden is on— Well, we're going to get there. That is more encompassed by Gilbert, I think, or what may come in Gilbert. But let's talk about the invited error. What is the preservation? Where are we at with preservation? Is it at the point at which an attorney tells the district court, this has been decided already. I'm just making this so that I can go to the Supreme Court and litigate my issue, but this has been decided. At what point—like, what obligation is the court at that point to look at it? Does the court have to look under the hood of that? Does the court have to inspect that? Does the court have to say, I don't care. I'm going to have to independently determine myself if, in fact, the law is settled on this issue or not? Like, what has to happen at that point? No, I think the court can accept the defendant's statement that I qualify under existing law. And then she went further. She said, I'm preserving Jackson argument. I'm preserving a Conage argument. I'm preserving a Shuler argument. She went through all the arguments that she had preserved. And if she were raising any of those arguments on appeal, absolutely not invited. But there's been no change in the law here on this issue. And so— Your opposing counsel says there has. I would disagree, Your Honor, because at this point in time, Jackson 2 had already been decided by this court. So we already knew the framework for determining if there was overbreath on the drug schedule. In other words, Brown just adopted Jackson 2. Correct. And Miller was just— And Miller only dealt with further divisibility of cocaine past its— Like, if flu pain could be divided out from cocaine. So nothing about this law changed in a way that— especially when they're saying it was our burden to prove it, which is why, again, I think this is particularly unfair to the United States. They're saying it was your burden to prove this, but you told the court you qualified under existing law. If we said, no, Your Honor, but now we want to put on an expert to testify about the isomers of cocaine, the district court would say, why? They're agreeing that they qualify for this enhancement. I don't know if the court has any further questions on the Erlinger issue or on the isomer. I don't on Erlinger. I'd just like to hear you say it. Let's say that we don't agree with you and that the overbreath issue is fully preserved. Fully preserved. Hard luck for you at sentencing. Do you win on de novo review? Just on this record? Yes. I'd like to hear you tell me why. We start with Hicks. In Hicks, this court said, in the context of proving that an offense qualifies as a serious drug offense based on the drug schedules, the burden is on the defendant to show overbreath. There are two ways that a defendant can show overbreath. One, they can point to a case that shows overbreath. Two, they can point to divergent statutory language. Let me stop you there. I'm totally following your argument. But what you did there is that if it's fully preserved on de novo review, you have to shift the burden to them. Is there any way on this record? It sounds obvious, but I just want to make sure I understand the position of the United States. On de novo review, is there enough in this record to say no? We put forth certificates of conviction and other things in the record that it may not be hugely persuasive. They could have come back and rebutted it with their own experts. But on this record, on de novo review, there's enough. Or no, there's not enough. For us to prevail? That's right. If you have the burden. I'm sorry, if we have the burden? You have the burden. Despite Duaneis Alvarez, I accept what you just did. In your response to my last question, you went down the Duaneis Alvarez line of cases and you said they have to, at some point, show more than a theoretical possibility. They have to show a reasonable probability. But if you have the burden, if it's fully preserved, two big ifs that I'm not conceding, but if they're there, have you satisfied your burden? Understanding that we're not conceding on burden, if we had the burden, no, there's not enough in this record. Okay, thank you. Does the court have any further questions? Thank you. We'd ask that you would affirm. Thank you so much. All right, Ms. Howard, you've got five minutes remaining. Thank you, Your Honor. I want to return to the paragraph 33 issue because I can see that it's giving Your Honor some trouble. I do want to embrace Edwards, frankly. Edwards is our on-point plain error Erlinger case. Edwards does look to the PSR, and we agree that the court can look to the PSR. But in Edwards, that PSR would have had that same language because all PSRs where a defendant is subject to the ACCA enhancement have the Chapter 4 enhancement language, where, as in Mr. Smith's case, it lays out the language of the statute, right? The Mr. So-and-so... The difficulty here, though, is that the PSR, at least in this case, goes beyond just laying out the language to specify commission dates, and now you're into Wooden where it says, hey, listen, you know, sort of the separation by one day is presumptively enough. Wooden did say that, but Wooden, right, also set out a multi-factor test, and Wooden didn't have an occasion, no pun intended, to address what to do when there are, in fact, offenses committed on separate dates, because in Wooden they were looking at offenses committed over the course of an evening. The first time the Supreme Court addressed what would a jury do, what would a fact finder do when presented with offenses on different dates, it said no separation in time is automatically dispositive, right? It said juries have to look at all of these factors. They have to make a number of different underlying factual findings and use those factual findings to answer the ultimate fact question of whether they were, in fact, committed on occasions different from one another. And here, as we've said, all of the factors under Wooden, including the span of less than a week, the exact same type of drug to and under cover in the same county where he was not arrested until after the second sale, all point to this being one occasion, or at the very least a reasonable probability that a jury could find that this is one occasion. So to be clear, this court doesn't have to find beyond a reasonable doubt or even by a preponderance of the evidence that these were one occasion. It just has to find that a reasonable jury could have reasonable doubt and therefore acquit Mr. Smith of different occasions. And the final thing I want to point out about the record is, again, the different arrest dates, the different offense dates. I think this is a unique situation where there was one arrest, one prosecution, frankly, supporting that this was one occasion, right? The law enforcement saw this as one by bust, worthy of one prosecution, and they brought... Not where it's tried as only the one incident where he sold that day. In other words, if a prosecutor was going to do what you're suggesting, they would have either done a conspiracy from this date to this date or they would have said, charged it all in one indictment or put both there. They wouldn't have just put one. I mean, that doesn't make sense for a prosecutor to do that if they meant to include a sale from a week earlier but that somehow isn't mentioned. I do disagree with that, Your Honor. I think prosecutors can and do exercise discretion, right? So if they see this as one small episode of drug dealing, really close in time, small amounts, absolutely, prosecutors would exercise discretion and say, you know, we tried to get him on a few. We're just going to get him with the one. We're going to move on and keep that in our file. The charging document would say from this date to this date he sold drugs. I mean, because evidentiary, you have to go to a jury and present both to them. And if you only charge the one incident, the one date on there, no judge is going to let you do it unless it might come in as 404B or something like that. I just, that's just not how in the real world things are done. And I think you know that too. I just, I understand the argument you're making. I get it. I just, I don't think that that reflects real world realities if this, in fact, was one occasion. I understand the point that Your Honor is making. I do think that prosecutors can and do, even though they might have evidence of multiple drug sales, they can pick and choose which ones to prosecute, which ones to charge, and hold on to, you know, the affidavits or the information they have in their file, which is what a reasonable jury could find happened here. Ms. Howard, you two disagree with each other. I just want to make sure I understand where in the record do you think there's evidence of a single undercover, as opposed to we don't even know if it's the same undercover. Right. So I think that that is the most reasonable inference on this record because we have two identical sales in the same jurisdiction, both with an undercover. It's an inference from the same record that I've reviewed. Correct. I want to make sure I'm not missing something where you think you actually have the same undercover in the record. I think that is the most reasonable inference in the record, and I think juries would make inferences on this record, reasonable inferences, that would lead them to find that this was on one occasion. And the other thing I wanted to say about that is that drug dealing is not like buying sandwiches at a restaurant, right? These are two small drug deals to an undercover, identical within less than a week, with no drug activity on either side. That is not like buying two sandwiches. Ms. Howard, his Honor has indulged me to let you go over the time. Last one. You don't need a retrial here, right? You just need a remand on Erlinger. You just need enough on Plain Air to have a remand for resentencing so you can put that undercover on the stand. That undercover might say, yeah, he said to me, buy two kilos. You're going to buy one on day one. I don't have enough for you today. Come back on day six. You don't need a retrial here. You need a resentencing on Erlinger, right? Or do you need more? Well, I think because the different occasions issue is a jury question. But let's say you waive that. Let's say you blew that. You can get occasions in front of the judge at sentencing. If you would have not done in paragraph 33 what I think Judge Luck and I think you did, I'm not speaking for him, I'm speaking for myself. If you did that in paragraph 33, you just need to go back to where we were at the moment of paragraph 33, right? To say, judge, it's not the same occasion. We'll put the undercover on the stand at sentencing, right? So I would be careful. I don't think that we would agree that you waived. He waived his jury trial rights, certainly not by not objecting to an enhancement paragraph in the PSR. That is not the same as waiving a jury trial right at a guilty plea with all of its associated protections and warnings. So he absolutely didn't waive his right. So our position is that it should go back for a resentencing, but it should go back for a resentencing not for the ACCA enhancement because he never waived his jury trial right. When you even look at the PSR and consider all of the unobjected to facts in the PSR, even assuming that those were presented to a jury, there is a reasonable probability a jury would acquit him. And so I don't think that it would go back for an evidentiary battle. Certainly that is something we would welcome a remand and let the court work out on remand what the proper course of action is. But no, I think because this is a jury trial right, that indisputably... There's no half step for you. It's all or nothing. It's indisputable. I think that his jury trial right was indisputably violated and I don't think that under Erlinger, the sentencing court can make the finding of different occasions. Thank you, Ms. Howard. Thank you. Very well. The case is submitted. We'll move to the third case. Noble.